523 So.2d 893 (1988)
Beatrice E. EDINBURGH
v.
Alvin T. EDINBURGH.
No. CA-8623.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 1988.
Rehearing Denied May 11, 1988.
William S. Penick, Francis H. Brown, III, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, for defendant/appellant.
Peter S. Thriffiley, Clarence F. Favret, III, Favret, Favret, Demarest & Russo, New Orleans, for plaintiff/appellee.
Before GARRISON, LOBRANO and WILLIAMS, JJ.
WILLIAMS, Judge.
This is an appeal by defendant Alvin T. Edinburgh from a decision of the trial court denying his reconventional demands *894 against plaintiff, Beatrice E. Edinburgh, his former spouse, concerning immovable property that she inherited from Hilda G. Dorsey.
In 1958, plaintiff and defendant began sharing Ms. Dorsey's home. They were still living there in September, 1965 when Hurricane Betsy hit the New Orleans area. The house was badly damaged, and Ms. Dorsey was unable to pay for the necessary repairs. She told the Edinburghs that she would leave the house to them in her will. Based upon this promise, defendant obtained a loan from the Small Business Administration ["SBA"] for the money to make the repairs. Five months later, Ms. Dorsey executed an Agreement to Transfer Title to Real Estate, wherein she agreed to leave plaintiff and defendant her house in consideration of their having been accommodation makers of the SBA note and of their promise to assume the obligation for payment of the note and a first mortgage on her house. Plaintiff and defendant were also to maintain the house and provide for and maintain Ms. Dorsey for the rest of her life.
The Edinburghs remained with Ms. Dorsey, provided for her and paid the mortgage note. Defendant also made a number of repairs and improvements to the house and financially assisted Ms. Dorsey. In 1972, the plaintiff and defendant were divorced, and defendant moved out of the house. Subsequently Ms. Dorsey died and bequeathed the house to the plaintiff. Plaintiff then filed a suit to remove a cloud from the title of the property, resulting from the February, 1966 agreement to bequeath the property jointly to plaintiff and defendant. Defendant reconvened arguing that he was entitled to specific performance of the February, 1966 agreement and, alternatively, to compensation for the money and effort he expended on the house.
The trial court held that the agreement was void on the basis of non-performance of both plaintiff and defendant as neither the mortgage nor the SBA loan had been fully paid out. The court, however, recognized that defendant had made some contributions, but held that they were insufficient to comply with the agreement so as to make them enforceable. The court did not address whether defendant was entitled to recover any amounts under the theories of detrimental reliance or unjust enrichment. It is from this holding that defendant now appeals asserting that the trial court was in error in not finding defendant had detrimentally relied upon Ms. Dorsey's promise to transfer the property to him and also in failing to hold that the estate had been unjustly enriched at his expense.[1]
We find that defendant is entitled to recover under a theory of detrimental reliance. In order to recover under this theory, a plaintiff must prove that: (1) a representation was made; (2) justifiable reliance upon that representation; and (3) a change in position to one's detriment because of the reliance, La.Civ.C. art. 1967; John Bailey Contractor, Inc. v. State, Dept. of Tr. & Dev., 439 So.2d 1055 (La.1983). Defendant has met these requirements. Based upon Ms. Dorsey's verbal promise to leave the house to him and his wife, which was later reduced to writing, he assumed certain financial responsibilities. He was under no obligation to assume these responsibilities, but did so in reasonable reliance upon Ms. Dorsey's promise. Defendant, therefore, is entitled to recover for the money he expended on the house in reliance upon Ms. Dorsey's promise that he would inherit an undivided one-half interest therein.
At trial, defendant testified that during the time he lived in the house, he did some work on it, thereby enhancing its value. Nevertheless, there is no record of the value of the services that he provided gratis, and he stated at trial that he could not say what they were worth (Tr. at 11). These items are, therefore, too speculative for us to consider.
We have also reviewed the receipts, cancelled checks, and other exhibits introduced *895 at trial. These exhibits ostensibly represent money spent by the defendant on the house. Some of this supporting documentation is sketchy, at best, but was introduced without objection, and therefore, merits our consideration.
We have also reviewed the evidence regarding payments made on the SBA loan. Some of the documents are duplicative. After a thorough analysis, we have concluded that defendant personally repaid $5,272.00 of the SBA loan. Because the money used for these payments was community property, he is only entitled to recover one-half, or $2,636.00.
Defendant has also introduced a number of receipts and cancelled checks which he argues represent money he expended on the house. We have carefully considered these items. We could hold that he is entitled to recover for those items which clearly improved the property and which he would not have been obligated to pay had he not relied upon the belief that the house would one day be his. We cannot hold, however, that he would be entitled to recover for a stereo, television, lamp, table, and other furniture without further proof that these items were purchased solely for Ms. Dorsey and that defendant received no benefit from them. Certainly, they were purchased in his name and we can presume that they were for his use, especially as they are in large part duplicative of items of personal property he listed as having lost as a result of the hurricane. Somewhat troublesome, are two checks made payable to Kermit Henry. There is no supporting documentation for these checks, but in light of defendant's testimony and the lack of objection to their introduction, we must assume the money was spent on the house. Defendant, therefore, expended a total of $8,120.61 on repairs to the house.
There is, however, a question as to proof in light of the application of the money received from the SBA. Defendant received $8,200.00 from the SBA to repair damages to the house. We can only presume that the money was used to pay for losses to the house and not for defendant's personal property. Defendant testified that he was an accomodation maker for Ms. Dorsey. There is no evidence that Ms. Dorsey had or assumed any obligation to buy personal property for defendant. Because the SBA money was sufficient to pay for repairs to the house, we cannot hold that defendant suffered any loss in paying for them.
Defendant has also introduced a number of checks payable to Ms. Dorsey and to New Orleans Public Service, Inc. and Sewerage and Water Board during the time that he lived in the house. At trial, defendant testified that he would try to give Ms. Dorsey money for rent and there is nothing in the record to indicate that these checks are not for that purpose. The utility checks present another problem. We have no way of determining how much of the utilities should be charged to Ms. Dorsey and how much to the Edinburghs, since all derived benefit from them. For our purposes, we will assume that Ms. Dorsey used one-half of these services, and the Edinburghs the other half. The total of the checks is $957.74 (this also includes a payment to an exterminator). The Edinburgh's half was $478.87. Once again, because these were community expenditures, defendant is entitled to be paid one-half of this amount, or $239.44.
Defendant, therefore, is entitled to recover $2,875.44 from Ms. Dorsey's succession, which has been unconditionally accepted by plaintiff.
AFFIRMED IN PART; REVERSED IN PART
LOBRANO, J., concurs.
NOTES
[1] Defendant has not specifically argued that the trial court's ruling voiding the agreement was erroneous although he seems to reach that conclusion in spite of the fact that defendant's actions clearly voided the agreement.